# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAN MULLENS,                        )
                                   )

               Plaintiff,       )

                                   )    **CIVIL ACTION**

v.                              )

                                 )    **No. 15-1394-JWL**

CAROLYN W. COLVIN,           )

Acting Commissioner of Social Security,   )

                                 )

             Defendant.     )

_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding the Administrative Law Judge's (ALJ) decision is not supported by the record evidence because he did not provide an evidentiary basis to prefer the opinion of one vocational expert (VE) over that of another, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

## I.    Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning December 31, 2008.  (R. 12, 190, 196).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He argues that the ALJ erred at step five of his consideration by preferring the opinion of one VE obtained through interrogatories shortly after the disability hearing over the opinion of the VE who testified at the hearing, without adequately discounting the opinion of the testifying VE or explaining the bases for his decision.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

    As the Commissioner points out, the sole issue in this case is whether the ALJ

properly credited the testimony of one VE over that of another.  (Comm'r Br. 4).  The

court finds that he did not.

## II.    Discussion

    The ALJ called a VE, Mr. Adams, to testify at the disability hearing on June 17,

2014.  (R. 23, 45-46).  He confirmed that Mr. Adams was aware that his testimony

"should be consistent with the Dictionary of Occupational Titles [(DOT)]," and that he

was to let the ALJ know if there was a conflict.  Id. at 45.  He provided the VE with a

hypothetical situation "assuming an individual with the same age, education, and work

history background as Mr. Mullens," and with limitations and abilities identical to the

RFC assessed in the decision under review here.  Id., compare (R. 16).  He asked if the

VE could identify any work such an individual could perform.  (R. 46).  The VE

responded that there is no work available to such an individual because sedentary jobs

which are simple "require either public [(interaction?)] or reaching, handling, and that

4

type of thing that would include some overhead." (R. 46). The ALJ stated that he had no other questions for the VE, and the hearing ended at that point. Id.

The record contains a set of interrogatories from another VE, Mr. Zumalt, dated June 24, 2014, exactly seven days after the disability hearing. (R. 328-33). In those interrogatories, the ALJ provided a hypothetical situation identical to that provided to Mr. Adams, and Mr. Zumalt responded that although the hypothetical individual would be unable to do any of Plaintiff's past relevant work, he would be able to perform other work in the economy of which two representative examples were a surveillance system monitor, or a dowel inspector. (R. 329-30). Mr. Zumalt stated that his responses were consistent with the DOT. and were based upon his more than 35 years' experience. Id. at 331.

In his decision, the ALJ provided the following discussion regarding the VEs' opinions:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert at the hearing testified that no jobs existed in the national economy. However, this testimony was not consistent with the dictionary of occupational titles [sic]. Therefore, the undersigned sent out post-hearing interrogatories to an additional vocational expert.

The vocational expert who submitted responses to interrogatories stated that given all of these factors the individual would be able to perform the requirements of representative occupations such as the following sedentary unskilled jobs:  surveillance system monitor (DOT# 379.376-010) with 500 jobs in Kansas and 100,000 jobs nationally; dowel inspector (DOT# 669.687-010) with 175 jobs in Kansas and 32,000 jobs nationally.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's responses to interrogatories is consistent with the information contained in the Dictionary of Occupational Titles (DOT).

(R. 21).

As Plaintiff argues, the ALJ made the conclusory finding that Mr. Adams's "testimony was not consistent with the dictionary of occupational titles [sic]," but did not point to record evidence or admissible authority demonstrating the inconsistency, and preferred Mr. Zumalt's opinion over that of Mr. Adams without providing his rationale for that finding other than to make the further conclusory finding that Mr. Zumalt's "responses to interrogatories is consistent with the information contained in the Dictionary of Occupational Titles."  Id.  Thus, it appears the ALJ preferred Mr. Zumalt's opinion because it was consistent with the DOT whereas Mr. Adams's opinion was inconsistent with the DOT.  However, he said nothing to identify the alleged inconsistency he found.  Moreover, neither this court nor the ALJ possess expertise in vocational matters regarding the DOT, and so far as the record reveals both Mr. Adams and Mr. Zumalt provided testimony which was consistent with the DOT.  Mr. Zumalt specifically stated that his opinion was consistent with the DOT and based on more than 35 years of experience in vocational matters (R. 331), but Mr Adams also specifically

6

acknowledged that his testimony was expected to be consistent with the DOT and that he was to report any conflicts.  (R. 45).  He did not testify as to any inconsistencies or their basis in his experience.  And the ALJ did not ask--he simply ended his questioning of Mr. Adams.  There is simply no record evidence to support the ALJ's determination that Mr. Adams's opinion conflicted with the DOT whereas Mr. Zumalt's did not.

To be sure, the two opinions are diametrically opposed to each other and cannot both stand.  And, it is the ALJ's duty to decide between the two of them.  But, it is also the ALJ who is responsible for the fact that there are two such diametrically opposed opinions in this record.  He is the one who propounded interrogatories to Mr. Zumalt immediately after the hearing, and to all appearances that is because he believes Mr. Adams's testimony is erroneous (inconsistent with the DOT).  If he believes Mr. Adam's testimony is erroneous, he must explain that belief grounded in the record or other admissible evidence.  He may not simply ask serial vocational experts until he gets a response he is comfortable with, accept that response. and base his disability determination upon it.

The Commissioner is correct both that the ALJ did weigh the VE's opinions, and that Mr. Zumalt's response that the hypothetical individual is able to perform work in the economy supports the ALJ's finding that Mr. Adams's opinion is inconsistent with the DOT.  However, that assertion proves nothing.  One could just as well argue that Mr. Adams's testimony that the hypothetical individual is unable to perform work in the economy supports a finding that Mr. Zumalt's opinion is inconsistent with the DOT.  An

ALJ may not simply use the record evidence as a smorgasbord from which he selects evidence which supports a decision he desires and ignores the rest.  As the Tenth Circuit noted long ago in the case of Clifton v. Chater, an ALJ is "required to discuss the evidence and explain why he" makes his findings at each step of the sequential evaluation process.  79 F.3d 1007, 1009 (10th Cir. 1996).  "[T]his court should not properly engage in the task of weighing evidence in cases before the Social Security Administration," and "[i]n the absence of ALJ findings supported by specific weighing of the evidence, [it] cannot assess whether relevant evidence adequately supports the ALJ's conclusion."  Id.  "[A] minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position."  Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984) (quoted in Clifton, 79 F.3d at 1010) (emphasis added).  Here, the same quantum of evidence is contrary to the ALJ's determination as supports it--a single vocational expert's express opinion.  The ALJ must explain why he chose one opinion over the other, and that choice must be supported by record evidence.

The Commissioner's argument that accepting Mr. Zumalt's opinion over that of Mr. Adams "fell within the 'zone of choice' permitted to the ALJ" (Pl. Br. 6-7) (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)), is nothing more than an argument that it is the ALJ's duty to make the decision.  The Commissioner's assertion is true, but as noted above the ALJ may not make a random or arbitrary choice.  He must make his decision based upon record evidence, and he must explain it in such a way that a

8

reviewing court might determine whether it is supported by the record evidence.  Remand is necessary for the Commissioner to evaluate the two VE opinions, and properly explain which one is supported by the record evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 2nd day of November 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**